**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2024 IL App (3d) 230681-U

Order filed November 18, 2024

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2024

| | | |
|---|---|---|
| MATTHEW FERGUSON, | ) | Appeal from the Circuit Court |
| | ) | of the 13th Judicial Circuit, |
| Plaintiff and | ) | Grundy County, Illinois, |
| Counterdefendant-Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DOUGLAS JOHN HEATH, Individually and | ) | |
| as Trustee of the John F. Heath and Mary M. | ) | |
| Heath Trust, and CAROLYN MARIE YOUNG, | ) | Appeal No. 3-23-0681 |
| | ) | Circuit No. 20-CH-26 |
| Defendants-Appellees | ) | |
| | ) | |
| | ) | |
| (Douglas John Heath, Individually and | ) | |
| as Trustee of the John F. Heath and Mary M. | ) | |
| Heath Trust, Defendant and Counterplaintiff- | ) | Honorable |
| Appellee). | ) | Sheldon R. Sobol, |
| | ) | Judge, Presiding. |

_____

JUSTICE BRENNAN delivered the judgment of the court.
Justices Holdridge and Davenport concurred in the judgment.

_____

**ORDER**

¶ 1    *Held*:  The trial court's finding that defendant did not act in bad faith was not against the manifest weight of the evidence. The trial court did not abuse its discretion when it

awarded defendant trustee fees, denied plaintiff's attorney fees and costs, and denied removal of defendant as trustee. Plaintiff failed to develop his argument regarding the sale of the residence and, therefore, forfeited the argument. Affirmed.

¶ 2 Plaintiff, Matthew Ferguson, appeals the trial court's finding following a bench trial that, although defendant, Douglas Heath, breached his fiduciary duty as trustee when he failed to pay rent while living at 2010 East Pine Bluff Road in Morris (the residence), a trust asset, he did not do so in bad faith. Plaintiff challenges the trial court's award of trustee fees and denial of plaintiff's request to remove defendant as trustee. Plaintiff further argues that he is entitled to reasonable attorney fees and costs and that the residence should be sold. For the reasons set forth below, we affirm the trial court's judgment.[1]

¶ 3 I. BACKGROUND

¶ 4 John and Mary Heath (settlors) had three children: Carolyn, Priscilla, and defendant. Priscilla died in 2008 and had two children, Jacob and plaintiff. Jacob died in 2017.

¶ 5 The subject of this appeal is a revocable living trust created by the settlors, the purpose of which was to provide financial support to its beneficiaries. The operative documents are the John F. Heath and Mary M. Heath Declaration of Trust Dated April 6, 1991 (Declaration), and the First Amendment to the John F. Heath and Mary M. Heath Declaration of Trust Dated April 6, 1991 (Amendment). The Amendment is dated May 5, 2009. The trust became irrevocable upon the death of the first settlor, at which time two separate trusts were to be created: a marital trust and a family trust. The family trust (the Trust) is the subject of this appeal.

---

[1] Because Carolyn Young is a beneficiary of the trust, and thus a necessary party to this action, plaintiff's complaint names her as a defendant. No relief was sought against Carolyn, and she did not file an appearance or otherwise participate in the underlying litigation or appeal. Any reference made to "defendant" herein refers solely to Douglas Heath.

2

¶ 6 At the inception of the revocable living trust, the settlors were named as co-trustees. Upon the death of the first settlor, the surviving settlor was to become the sole trustee. Defendant was appointed as successor trustee upon "the death, disability, or resignation" of both settlors. The relevant provisions of the Declaration are as follows.

¶ 7 Article IV, section 3, as amended, provided that, upon the death of the surviving settlor, the family trust was to be divided into three shares: one-third to defendant, one-third to Carolyn, and one-third to plaintiff and Jacob to share equally. The Trust provided that plaintiff and Jacob's share was to be held in a separate trust, and Walter Ferguson, plaintiff's father, was appointed as trustee of said trust. Walter was granted the authority to name a successor trustee. Because Jacob did not have children when he died, plaintiff is entitled to Jacob's share.

¶ 8 Article V, section 4, vested various powers in the trustee, including, in pertinent part, as follows:

"The Trustee shall hold, manage, care for, and protect the Trust Estate and shall have the following powers and, except to the extent inconsistent herewith, those now or hereafter conferred by law:

* * *

(e) To lease trust property for any period of time though commencing in the future or extending beyond the term of the trust;

* * *

(g) To sell at public or private sale, contract to sell, convey, exchange, transfer, and otherwise deal with the trust property and any reinvestments thereof from time to time for such price and upon such terms as the Trustee sees fit;

* * *

3

(j) To divide or distribute the trust estate in cash or in kind, or partly in each, or in undivided interests or in different assets or disproportionate interests in assets; to value the trust property for such purposes; and to sell any property in order to make division or distribution;

(k) *To deal with*, purchase assets from, *or make loans to, the fiduciary of any trust made by the Settlors or any member of the Settlors' family* or a trust or estate in which any beneficiary under this Trust has an interest, *though a Trustee hereunder is such fiduciary*, and to retain any property so purchased;

\* \* \*

(o) To collect the rents and earnings from and with respect to any real estate which is in possession of the Trustee, to keep in tenantable repair the buildings and fixtures located thereon, to make all reasonable expenditures necessary to preserve the real estate, \*\*\*;

(p) To pay all expenses incurred in the administration of the trusts hereby created, including, but not by way of limitation, \*\*\* compensation to the Trustee \*\*\*." (Emphases added.)

Article V, section 5, provides that the trustee "shall receive fair compensation for its services."

¶ 9        As for termination of the Trust, Article V, section 6, provides that, in the event the Trust's market value becomes $25,000 or less, the trustee may, in his discretion, terminate the Trust and distribute the Trust assets. Article V, section 7, provides that any property still held by the Trust more than 21 years after the death of the last beneficiary who was alive at the death of the first settlor to die "shall immediately be distributed" to those entitled to said property.

¶ 10       The following facts are derived from the evidence presented at trial. The settlors originally lived in the residence, and defendant lived in an apartment in Joliet. In 2010, due to the settlors'

4

ailing health, defendant moved into the residence to help care for them. During this time, defendant did not pay rent to the settlors or the Trust. John passed away on August 9, 2011, at which point Mary became the sole trustee of the Trust, but she suffered from dementia and required extensive care. On August 23, 2011, Mary executed her resignation, and defendant accepted the assignment as trustee. Defendant took care of the residence, cooked Mary's meals, did her laundry, transported her to appointments, managed her finances, and maintained her bookkeeping. In 2012, Mary suffered a major heart attack, at which time defendant also became responsible for administering her medication and for her personal hygiene. She required 24/7 assistance. Mary died on May 15, 2014.

¶ 11      The primary assets of the Trust at the time of Mary's death were the residence and a 110-acre farm. Following Mary's death, defendant leased the farm, paid taxes, maintained insurance, and handled the general upkeep for both properties.

¶ 12      The farm was an irregular property that was bisected by a curved roadway, was in a floodplain along the Mazon River, and required an easement through the neighboring Robinson farm to access the southern portion of the property. In an effort to settle the Trust, defendant began marketing the farm for sale in 2016, which proved to be a complicated process. After obtaining a survey and learning of the farm's irregularities, defendant determined that a public auction would not be the most successful way to sell the property. At that time, Pete Kodat was farming the land pursuant to a lease, and defendant elected to let him farm for another year before selling. Thereafter, defendant sought offers from nearby farmers and was initially met with offers to either purchase smaller portions of the farm or to purchase the farm at a discounted price, which defendant rejected. Eventually, the Robinson family expressed interest in the farm, and defendant negotiated a contract to sell the entire property for approximately $120,000 more than its appraised

fair market value. The sale closed at the end of 2017, resulting in each beneficiary receiving a distribution of $200,000.

¶ 13    Defendant then turned his efforts to the residence, where he continued to live without paying rent. In exchange for an agreement to forego trustee fees, defendant had the residence appraised and requested that the other beneficiaries assign to him their one-third interest in the property. Carolyn agreed to do so. Defendant negotiated his offer with Walter, as trustee of plaintiff's share, and subsequently with plaintiff, after Walter resigned and appointed plaintiff as successor trustee. Ultimately, the parties were unable to reach an agreement, and defendant continued to live in the residence without paying rent. Defendant also paid the utilities from the Trust and took a personal loan of $1600 from the Trust. As of the time of trial, defendant had reimbursed the Trust for the utilities and personal loan.

¶ 14    In addition to his work regarding the farm, residence, and general administration of the Trust, defendant completed a variety of other tasks benefiting the Trust. For example, at the time of Mary's death, Trent Sparrow, the settlors' nephew, owed the Trust approximately $41,000 for repayment of a loan. Sparrow consistently failed to make payments, so defendant had to routinely contact him to collect the money. As of the time of trial, defendant had collected the full amount due to the Trust. Defendant also settled a hail damage claim for the residence, resulting in the installation of a new roof. Moreover, in 2018, Adam Holmes filed a lawsuit against the Trust, defendant, and several of defendant's neighbors, claiming that they denied him access to the Mazon River. Both the Trust and defendant were dismissed from the lawsuit. In 2019, defendant successfully appealed the property tax assessment for the residence, reducing its assessed valued by approximately $36,000 and saving the trust nearly $11,000 in property taxes between 2019 at the time of trial. At some point, defendant distributed an additional $40,000 to each beneficiary.

6

¶ 15        On June 17, 2020, plaintiff filed a five-count complaint. Count I—breach of fiduciary duty—is relevant to this appeal. Plaintiff alleged that defendant breached his fiduciary duty by, *inter alia*, failing to pay rent to the Trust while living in the residence, paying the residence's utility bills from the Trust, and using Trust assets for his own benefit. In his prayer for relief, plaintiff sought damages exceeding $50,000, the sale of the residence, removal of defendant as trustee, dissolution of the Trust, an accounting, defendant's reimbursement to the Trust for all funds wrongfully spent, and attorney fees and costs. Defendant denied the allegations and claimed that he offered to pay plaintiff reasonable rent and utilities for the residence, but that plaintiff declined the offer.

¶ 16        On August 18, 2021, defendant filed a three-count amended counterclaim. Count I—claim for trustee fees—is relevant to this appeal. In count I, defendant alleged that, pursuant to section 7 of the Illinois Trusts and Trustees Act (760 ILCS 5/7 (West 2018)) (repealed by Pub. Act. 101-48, § 1505 (eff. Jan. 1, 2020)), he was entitled to reimbursement for all proper expenses incurred in the management and protection of the trust and to reasonable compensation for his services rendered.[2] In support, defendant claimed that he managed and protected the Trust assets, including the residence, farm, bank accounts, and other investments, since August 23, 2011. Plaintiff responded that defendant's actions disqualified him from receiving trustee fees or, in the alternative, his trustee fees should be reduced in an amount equal to his improper use of Trust assets.

---

[2] Effective January 1, 2020, section 708 of the Illinois Trust Code (Code) (760 ILCS 3/708 (West 2022)), provided the statutory authority for a trustee's compensation.

¶ 17    On October 23, 2023, following a multi-day bench trial, the court entered its judgment. The court highlighted that it "heard or viewed all the testimony and documentary evidence, viewed the witnesses, and assessed their candor, credibility, and demeanor" in making its factual findings.

¶ 18    As to count I of plaintiff's complaint, the court found that defendant breached his fiduciary duty by failing to pay rent to the Trust while he occupied the residence. However, the court "d[id] not find that he engaged in an attempt to consciously deprive the other beneficiaries of funds to which they might otherwise be entitled." To support this conclusion, the court found that defendant did not seek trustee fees for his work, that he sought an appraisal, and attempted to obtain the approval of the other beneficiaries to purchase the residence. The court found it unnecessary for the other beneficiaries to approve of the sale, as the Trust allowed the trustee to unilaterally sell the residence but that "[h]is manner in going about the purchase of the home was one of mistake rather than greed."

¶ 19    The court ordered that defendant reimburse the Trust for all back rents owed between Mary's death and the date the judgment was entered. Relying upon a rental analysis submitted as evidence, the court calculated back rents of $150,100, subject to any setoffs. Defendant was to "either list the home for sale on the open market or that if he determines he wishes to continue renting the property that he establish a fair market rental value." The court rejected plaintiff's request to remove defendant as trustee, finding that he did not make a "conscious attempt to defraud the Trust." Moreover, citing Article V, section 6, of the Trust, the court rejected plaintiff's call for the immediate dissolution of the Trust, explaining that the Trust is permitted to continue for 21 years after death of the last beneficiary.

¶ 20    As to count I of defendant's counterclaim, the court awarded trustee fees of $68,400, calculated by 5700 hours of work at $12 per hour. Defendant requested compensation at $25 per

8

hour, but the court reduced the rate, reasoning "that it was [defendant]'s mother and father who he cared for." To support its award, the court found that defendant provided daily care for his parents; paid their household expenses; collected on the Sparrow debt; successfully appealed the property taxes; managed the farm; and sold the farm above its fair market value, noting that its physical characteristics made it difficult to lease and sell. The court specifically "note[d] that caring for aged and increasingly unhealthy elderly people is no easy task."

¶ 21    Considering the setoff of trustee fees and defendant's interest in one-third of any sum he owed to the Trust, the court ordered that "[t]he net owed by [defendant] to the Trust for the benefit of the other two beneficiaries is $54,612." On November 21, 2023, defendant filed a motion to reconsider, arguing that, because Carolyn did not file an appearance or otherwise participate in the litigation, the court should not have made a finding as to the amount owed to Carolyn or entered any judgment in her favor. Accordingly, defendant requested that the judgment be amended to provide that defendant owed $27,306 to the Trust for plaintiff's benefit. The corresponding notice of motion set a presentation date of December 19, 2023; however, the record does not contain an order disposing of the motion.

¶ 22                                                II. ANALYSIS

¶ 23    Initially, we note that defendant did not file an appellee brief with this court. The court may nonetheless address the merits of the appeal where, as is the case here, "the record is simple and the claimed errors are such that the court can easily decide them without the aid of an appellee's brief ***." *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133 (1976). The issues raised on appeal concern the characterization of certain undisputed conduct by defendant, as well as how to remedy said conduct. Despite the lack of an appellee brief, we are able to easily understand and decide the issues on appeal.

9

¶ 24       Prior to addressing the merits of the appeal, though, we must determine whether we have jurisdiction despite the record's omission of the order disposing of defendant's motion to reconsider. We have an independent duty to ensure that jurisdiction "is proper and thus will consider issues of jurisdiction regardless of whether either party has raised them." *People v. Aldama*, 366 Ill. App. 3d 724, 725 (2006). In his jurisdictional statement, plaintiff cites Illinois Supreme Court Rule 303 (eff. July 1, 2017) as the basis for our jurisdiction.[3] Rule 303 "govern[s] appeals from cases in which the final order has disposed of the entire controversy" such that no issue within the case remains pending and undetermined. *In re Adoption of Ginnell*, 316 Ill. App. 3d 789, 791-92 (2000). Therefore, before we may exercise jurisdiction pursuant to Rule 303, the court must have ruled upon defendant's motion to reconsider, thereby resolving the "entire controversy."

¶ 25       While the order disposing of defendant's motion to reconsider is missing from the record, a review of the court's docket entries allows us to conclude that the motion to reconsider was, indeed, ruled upon. Specifically, the docket reflects that, on December 19, 2023, counsel for both parties appeared via Zoom for presentation of defendant's motion to reconsider; the court heard arguments; and the motion was continued to January 19, 2024. The docket entry dated January 19, 2024, reflects that counsel for both parties appeared via Zoom for the court's ruling on the motion to reconsider; the court made its ruling; and the matter was taken off the call. However, there was no indication of whether the motion was granted or denied. Similarly, plaintiff's motion to amend his notice of appeal and opening brief indicate that, on January 19, 2024, the court "decided" the motion to reconsider, although, again, they do not specify whether it was granted or denied.

---

[3] Specifically, plaintiff cites Rule 303(a)(1), (2), and (5); however, a Rule 303(a)(5) does not exist.

10

¶ 26        Accordingly, we accept that defendant's motion to reconsider does not remain pending and undetermined, and we have jurisdiction over this appeal pursuant to Rule 303. We recognize that the omission of the order from the common law record violates Rule 321 (eff. Oct. 1, 2021) ("The record on appeal shall consist of *** the entire original common law record, unless the parties stipulate for, or the trial court, after notice and hearing, or the reviewing court, orders less,"), but the outcome of the motion is inconsequential to our analysis. We therefore turn to the merits of the appeal.

¶ 27        On appeal, plaintiff argues that (1) the court's finding that defendant did not consciously deprive the beneficiaries of funds to which they were entitled was against the manifest weight of the evidence; (2) defendant is not entitled to trustee fees due to his willful breach of his fiduciary duty; (3) plaintiff is entitled to attorney fees; (4) defendant should be removed as trustee; and (5) the residence should be sold. We address each argument in turn.

¶ 28                                    A. Bad Faith

¶ 29        We begin with the court's finding that, although defendant breached his fiduciary duty by living rent-free in the residence, he did not consciously deprive the Trust or make a "conscious attempt to defraud the Trust." While it is not explicitly labeled as such in the judgment, we interpret this to be a finding that defendant did not act in bad faith. Plaintiff challenges this finding on appeal, arguing that defendant acted in bad faith via self-dealing when he utilized the Trust assets as his own; lived in the residence rent-free; paid utilities for the residence from the Trust after Mary's death; failed to sell the residence; failed to provide plaintiff his share of the Trust; and loaned himself funds from the Trust.

¶ 30        A trustee owes a fiduciary duty to a trust's beneficiaries. "In keeping with that duty, a trustee is obligated to carry out the trust according to its terms; to act with the highest degree of

11

fidelity and good faith; to serve the interests of the beneficiaries with complete loyalty, excluding all self-interest; and to refrain from dealing with the trust property for his own individual benefit." *Hill v. Brinkman*, 2023 IL App (3d) 220394, ¶ 17. Generally, a presumption of fraud or bad faith arises if a trustee personally benefits from his fiduciary status, and the burden then shifts to the trustee to prove by clear and convincing evidence that he acted in good faith. *Grove v. Morton Community Bank*, 2022 IL App (3d) 210177, ¶¶ 40-41.

¶ 31　　　　An exception to the rule against self-dealing, however, arises where the trust document expressly contemplates, creates, or permits a trustee's conflict of interest. *Hill*, 2023 IL App (3d) 220394, ¶ 17. Under this exception, the settlor of a trust may waive the trustee's duty of undivided loyalty "(1) expressly, by specifically conferring upon the trustee the power to act in a dual capacity, or (2) by implication, by knowingly placing the trustee in a position that might conflict with the interests of the beneficiaries." *Id.* When this exception applies, a trustee will only be held liable for self-dealing conduct if he has acted dishonestly, in bad faith, or with an abuse of discretion. *Id.* Further, when a trust document creates or permits a trustee's conflict of interest, "the burden of proof remains on the party challenging the trustee's conduct since there is no presumption against the trustee despite the trustee's divided loyalty." *Id.*

¶ 32　　　　The issues of self-dealing and bad faith require two separate analyses, as they are not interchangeable concepts, though plaintiff here conflates the concepts. Under these circumstances, we do not automatically conclude that, because defendant engaged in self-dealing, he acted in bad faith.

¶ 33　　　　We first address whether the Trust permitted defendant to self-deal by applying the rules of trust interpretation. So long as it is not against public policy, a trust will be interpreted to effectuate the settlor's intention. *Duvall v. LaSalle National Bank*, 177 Ill. App. 3d 770, 772

12

(1988). The intention is derived from the trust document as a whole, rather than from isolated phrases, clauses, or sentences. *Id.* We review issues of trust interpretation *de novo*. *Hill*, 2023 IL App (3d) 220394, ¶ 16.

¶ 34   In delineating the trustee's powers, article V, section 4(k), of the Trust generally provides that the trustee has the power to "deal with" and "make loans to" the fiduciary of any trust made by the settlors or to any member of the family, specifically noting that this is permitted "though a Trustee hereunder is such fiduciary[.]" As both the fiduciary of the Trust and a family member of the settlors, defendant falls within both contemplated categories of individuals with which the trustee was allowed to transact. Consequently, the plain language of the Trust contemplates, creates, and permits defendant's conflict of interest and allows him, as trustee, to engage in a certain level of self-dealing, so long as it is not done in bad faith. Therefore, the burden remained on plaintiff to present evidence of defendant's bad faith. *Hill*, 2023 IL App (3d) 220394, ¶ 17.

¶ 35   Good faith administration of a trust requires a trustee to act honestly and with the most sensitive degree of honor. *Rennacker v. Rennacker*, 156 Ill. App. 3d 712, 715 (1987). By extension, then, a finding of bad faith requires evidence of dishonest conduct by the trustee. See *Bad Faith*, Black's Law Dictionary (12th ed. 2024) (defining "bad faith" as "[d]ishonesty of belief, purpose, or motive"). In determining whether a trustee acted in bad faith, the trial court makes a factual finding that will not be disturbed unless it is against the manifest weight of the evidence. *In re Estate of Halas*, 209 Ill. App. 3d 333, 345 (1991). Our role is not to reweigh the evidence or assess witness credibility to determine whether we would have drawn different conclusions from the evidence. *In re Marriage of Jessica F. and Justin H.*, 2024 IL App (4th) 231264, ¶ 48. Rather, the trial court's decision will be set aside only "when an opposite conclusion is apparent or when the findings appear to be unreasonable, arbitrary, or not based on the evidence." *Eychaner v. Gross*,

13

202 Ill. 2d 228, 252 (2002). We may affirm the trial court's judgment for any reason supported by the record, regardless of the rationale employed by the trial court in reaching its decision. *Akemann v. Quinn*, 2014 IL App (4th) 130867, ¶ 21.

¶ 36        We agree with plaintiff that the Trust does not sanction defendant living in the residence rent-free or paying utilities from the Trust; however, defendant's honest work on behalf of the Trust supports the conclusion that he did not act in bad faith. For example, defendant sold the "irregular" farm for excess of its appraised fair market value after exercising careful judgment and patience as to the timing of the sale and after rejecting unsatisfactory offers. Thereafter, defendant made efforts to dispose of the residence in a manner that was fair to all beneficiaries. Defendant undertook several additional tasks to benefit the Trust, including, but not limited to, collecting on the Sparrow debt, appealing the residence's property tax assessment, settling the hail damage claim, and securing the Trust's dismissal from the Holmes lawsuit. While plaintiff correctly notes that nearly 10 years have elapsed since Mary's death, it stands unrebutted that this has been a complex Trust to settle.

¶ 37        Simply put, given the conflict of interest sanctioned by the Trust document, the unique circumstances surrounding defendant living in the residence prior to the death of the settlors, and defendant's diligent administration of the Trust, the trial court's finding that defendant's conduct was more an error in judgment than an act of improper self-dealing or bad faith was not against the manifest weight of the evidence. See *McCormick v. McCormick*, 180 Ill. App. 3d 184, 197 (1988) ("Ordinarily, trustees who act honestly, prudently and in good faith are not liable for errors of judgment.").

¶ 38        Regarding defendant's personal loan taken from the Trust, plaintiff relies upon *In re Estate of Muppavarapu*, 359 Ill. App. 3d 925 (2005), for the proposition that, as a matter of law, a trustee

14

acts in bad faith when he borrows funds from the trust, even if the funds are later repaid. However, *Muppavarapu* is easily distinguishable, as the trust at issue in *Muppavarapu* did not contain a provision allowing the trustee, who was also a beneficiary, to make personal loans to himself. See *id.* The trustee acted unilaterally, depleted a significant portion of the trust assets, and violated the stated purpose of the trust. *Id.* at 930. Here, on the other hand, article V, section 4(k), of the Trust expressly permitted defendant, as both trustee and a family member, to make loans to himself in his individual capacity. Therefore, defendant's conduct fell within the express powers granted to him by the Trust, and plaintiff's argument on this point is unavailing to the extent the loan was repaid.

¶ 39        Lastly, plaintiff points to defendant's failure to sell the residence and consider the needs of the beneficiaries as evidence of his bad faith. Plaintiff fails to develop any meaningful argument as to these points, instead placing the blame for his general lack of funds on defendant. To the contrary, defendant's extensive work for the Trust and prior distributions of $240,000 to each beneficiary demonstrate that he did, indeed, consider the needs of the beneficiaries.

¶ 40        Plaintiff does not challenge the evidence demonstrating defendant's work on behalf of the Trust, instead asking that we nonetheless conclude that defendant's self-dealing conduct intrinsically proves his bad faith. Plaintiff's argument is akin to a request that we reweigh the evidence and arrive at a different conclusion, which we cannot do. *In re Marriage of Jessica F. and Justin H.*, 2024 IL App (4th) 231264, ¶ 48.

¶ 41        Prior to making its factual findings, the court noted that it had considered all the evidence and assessed the witnesses' candor, credibility, and demeanor. The court was presented with ample evidence to support its finding that defendant administered the Trust in good faith, despite certain

instances of erroneous judgment. Accordingly, its finding was not against the manifest weight of the evidence.

¶ 42                                    B. Trustee Fees

¶ 43      Plaintiff next challenges the court's award of trustee fees, arguing that defendant willfully and deliberately breached his fiduciary duty and, therefore, his trustee fees must be forfeited. Plaintiff does not challenge the trial court's calculation of trustee fees, instead focusing solely on the fact that trustee fees were awarded at all.

¶ 44      The court may, in its discretion, reduce or deny trustee fees in the event of a breach of trust. 760 ILCS 3/1001(b)(8) (West 2022); see also *Grove*, 2022 IL App (3d) 210177, ¶ 37 ("[I]t is within the circuit court's equitable discretion to decide the proper remedy for a breach of fiduciary duty."). Public policy dictates that "a willful and deliberate breach of a fiduciary duty requires complete forfeiture of all compensation during the period of the breach." *LID Associates v. Dolan*, 324 Ill. App. 3d 1047, 1071 (2001). The rationale underlying this policy is "to deprive the wrongdoer of the gains from the breach of duty and to deter disloyalty." *Tully v. McLean*, 409 Ill. App. 3d 659, 681 (2011). A trial court's award of trustee fees is reviewed for an abuse of discretion. *Lampe v. Pawlarczyk*, 314 Ill. App. 3d 455, 464 (2000). A trial court abuses its discretion when it makes a ruling that no reasonable person would agree with. *Pedersen & Houpt, P.C. v. Summit Real Estate Group, LLC*, 376 Ill. App. 3d 681, 685 (2007).

¶ 45      For the same reasons we affirm the court's finding that defendant did not act in bad faith (see *supra* ¶ 38), we conclude that defendant's breach was not willful and deliberate. The court was free to exercise its discretion in fashioning an appropriate remedy for defendant's breach. *Grove*, 2022 IL App (3d) 210177, ¶ 37. Given the unrebutted evidence of the diligent work

16

performed by defendant on behalf of the Trust, we cannot say that the court's award of trustee fees was an abuse of discretion.

¶ 46                                                    C. Attorney Fees

¶ 47        Plaintiff next challenges the court's denial of his attorney fees, arguing that filing a lawsuit was necessary to enforce the terms of the Trust and that the lawsuit benefitted the beneficiaries. "[T]he decision to award attorney fees and costs is within the sound discretion of the trial court." *Halas*, 209 Ill. App. 3d at 352. Plaintiff fails to provide authority or otherwise develop his argument that the court's denial of attorney fees was an abuse of discretion; therefore, his argument is forfeited. *First Mercury Insurance Co. v. Nationwide Security Services, Inc.*, 2016 IL App (1st) 143924, ¶ 21 ("[A] reviewing court is entitled to have the issues on appeal clearly defined with pertinent authority cited and a cohesive legal argument presented ***.")

¶ 48                                                  D. Removal of Trustee

¶ 49        Plaintiff contends that defendant should have been removed as trustee due to his self-dealing conduct. A court may, in its discretion, remove a trustee who commits a serious breach of trust. 760 ILCS 3/706(b)(1) (West 2022). However, the court's power to remove a trustee should be exercised sparingly, and only when necessary to save the trust property. *Wylie v. Bushnell*, 277 Ill. 484, 505 (1917). "Mere error, or even breach of trust, may not be sufficient." *Id.* (quoting 1 Perry on Trusts (6th Ed.) § 276). "The court will less readily remove a trustee named by the settlor than a trustee appointed by the court or by a third person ***." Restatement (Second) of Trusts § 107 cmt. f (1965). Absent an abuse of discretion, a trial court's refusal to remove a trustee will not be disturbed.

¶ 50        Here, the settlors specifically named defendant as successor trustee, and there is ample evidence of the various ways in which his actions have benefitted the Trust. Any breach has been

adequately remedied via defendant's reimbursement to the Trust. Plaintiff has not presented any argument to suggest that defendant will repeat his conduct, necessitating removal to preserve the Trust assets. Under these circumstances, the mere fact that defendant breached his fiduciary duty is not sufficient to require his removal, and the court did not abuse its discretion in ruling as such.

¶ 51                                          E. Sale of Residence

¶ 52        Finally, defendant argues in a cursory manner that the residence should be sold "to address [plaintiff's] ongoing financial needs." Plaintiff fails to meaningfully develop this argument or provide any citations to supportive legal authority and, therefore, this argument is forfeited. *Bartlow v. Costigan*, 2014 IL 115152, ¶ 52 (holding that issues raised in a cursory fashion are forfeited).

¶ 53                                          III. CONCLUSION

¶ 54        For the reasons stated herein, we affirm the judgment of the circuit court of Grundy County.

¶ 55        Affirmed.