2026 IL App (1st) 250320-U

FIRST DIVISION
June 22, 2026

No. 1-25-0320

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| RENEE G. BOTELHO, as Successor Trustee under the Edmund M. Miniat, Jr. Trust dated January 20, 1982, as amended and restated, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) ) ) | |
| v. | ) ) | No. 14 CH 10693 |
| Kevin Miniat, | ) ) | |
| Defendant-Appellant. | ) ) ) | |
| -------------------------------------------------------------------- | ) ) | |
| Edmund M. Miniat, Jr. Trust dated January 20, 1982, | ) ) ) | |
| Third Party-Plaintiff-Appellant, | ) ) ) | |
| v. | ) ) | |
| Renee G. Botelho, individually, | ) ) | Honorable Cecilia A. Horan, |
| Third-Party-Defendant. | ) | Judge Presiding. |

_____

JUSTICE HOWSE delivered the judgment of the court.
Presiding Justice Fitzgerald Smith and Justice Cobbs concurred in the judgment.

ORDER

¶ 1    *Held*:   We affirm the judgment of the circuit court of Cook County terminating the trust, granting a release of liability to the trustee, and distributing the trust assets in accordance with the trust's terms. Due to threats of litigation from a trust beneficiary, which would have imposed attorney fees on the trust, the trustee was authorized by the trust to file a

complaint seeking a release before distributing the trust assets. The trial court had jurisdiction to consider the trustee's complaint and to grant the requested relief. The trial court did not abuse its discretion in determining that the trustee did not act in bad faith either in administering the trust or in filing the complaint. The trustee was entitled to attorney fees chargeable to the trust, which were paid by the trustee.

¶ 2 Plaintiff, Renee G. Botelho, in her capacity as Successor Trustee under the Edmund M. Miniat, Jr. Trust dated January 20, 1982, as amended and restated (the trustee), filed a complaint for Accounting (count I) and Declaratory Judgment (count II). The complaint sought to terminate the trust and asked the trial court to approve a final distribution of the trust assets and grant the trustee a release from liability pursuant to the terms of the trust. Defendant, Kevin Miniat, a beneficiary of the trust, challenged the trustee's actions in administering the trust and in pursuing the instant complaint. The trial court granted judgment in favor of the trustee on the complaint and against defendant on his affirmative defenses and counterclaims.

¶ 3 For the following reasons, we affirm.

¶ 4 BACKGROUND

¶ 5 On June 26, 2014, plaintiff, Renee G. Botelho, in her capacity as Successor Trustee under the Edmund M. Miniat, Jr. Trust, filed an initial "Complaint for Accounting" against defendant, Kevin Miniat, and against Kevin's children, Edmund S. Miniat, Matthew K. Miniat, and Dana M. Miniat. The trust settlor, Edmund M. Miniat, is the father of both Renee Botelho (individually, Botelho) and defendant.

¶ 6 Renee and defendant have another sibling, Linda Dieckmann, who is a beneficiary of the trust but was not a party to the complaint and is not a party to this appeal. (Defendant Kevin's children have since been dismissed from the case and are not parties to this appeal. We will refer to defendant singularly.)

¶ 7       The siblings and their children were all beneficiaries under the trust. Botelho became trustee after her father's death, pursuant to the terms of the trust. Defendant does not reside in Illinois, but, the complaint alleged, "a majority of the events described [in the complaint] occurred in Cook County, Illinois."

¶ 8       The initial complaint contained a single count and, among other prayers for relief, asked the court to "approve all actions taken to date by the Trustee in the administration of the Trust *** and approve[] the Final Account," "order that the Trust assets be applied and distributed per the terms of the Trust and per the Proposed Final Distributions," order that the trustee's "reasonable and proper" attorney fees and costs be paid by the trust, and discharge Botelho as trustee.

¶ 9       On June 30, 2017, the trial court granted defendant's motion to dismiss the initial complaint based on a lack of subject matter jurisdiction. The court found the complaint did not state a justiciable matter because the initial complaint asked the court to terminate the trust but "did not contain a single allegation that defendants have objected to [the trustee's] acts or omissions." Instead, the trustee "complains that [defendants] *** have failed to approve her final accounting and release her[, but] that does not create a justiciable matter." The court noted that, "[u]nder standard trust administration, the trustee furnishes the eligible beneficiaries with a current account, and that account becomes binding on each beneficiary unless [they] institute[] an action against the trustee." (Internal quotation marks and citation omitted.) The court noted that the trust "contemplates this very procedure." The court concluded that because "the complaint fails to allege that [defendants] have objected to any of the trustee's actions or omissions, this is a hypothetical case" and granted the motion to dismiss for lack of subject matter jurisdiction.

¶ 10 On August 31, 2017, the trustee filed a "First Amended Complaint for Accounting" (the operative complaint or "complaint") against defendant. The complaint alleged that since Botelho became trustee, defendant made express threats of litigation against the trustee related to the management of the trust's assets. The complaint alleged that defendant accused the trustee of mismanagement by refusing to dissolve and distribute a trust asset: the Miniat Family Investments, L.P., (hereinafter, LP or partnership), and questioned the execution of specific gifts under the trust. The complaint alleged that in response to these threats, the trustee, pursuant to section 8.03 of the trust, "offered to condition the final distribution of the Trust principal *** on the release of the Trustee." Beginning in May 2012 the trustee provided all of the beneficiaries with an accounting of the trust, titled First and Final Account, and a draft of a release. The complaint stated that the trustee sent the accounting (and later, updated accountings) "for approval to secure a release from each [beneficiary] in tandem with a proposed final distribution of the Trust," and that the trustee was acting pursuant to section 8.03 of the trust.

¶ 11 Section 8.03 of the trust reads as follows:

"8.03 Trustee's Right to Account Settlement Before Distribution. Before distribution of any trust principal, the trustee shall have the right to require settlement of any open accounts of the trust from which the distribution is being made, either by the written approval and release of all beneficiaries having an interest in the distribution or, if the releases cannot be obtained, by court settlement of the open accounts. All the trustee's reasonable fees and expenses (including attorneys' fees) attributable to approval of the trustee's accounts shall be paid by the trust involved."

¶ 12      All of the beneficiaries except defendant (and his children) agreed and signed the release. The complaint alleged that instead of approving the accounting and signing the release, defendant requested additional documentation, demanded that the trustee discharge the trust's attorney, and demanded that the trustee distribute the LP interests. The trustee claimed that all the material defendant requested was provided to him other than two: (i) original data files and (ii) software used to prepare the last accounting sent to defendant. The trustee also provided "an explanation of specific gifts under the Trust."

¶ 13      In October 2012, June 2013, and March 2014, the trustee sent all beneficiaries a First, Second, and Third Amended and Final Account with requests to execute an approval of the amount and a release of the trustee. The complaint alleged that the trustee never received any formal objection from defendant to any of the accountings; however, defendant did not sign the release. The trustee alleged, the "only other recourse to achieve a release was to file the instant action." The complaint alleged that since the filing of the initial complaint in 2014, defendant "filed pleadings that accuse the Trustee of mismanagement of Trust assets," including accusations "related to administration of specific gifts," and "breach of fiduciary duty" as well as "several 'affirmative defenses.' " The complaint alleged that defendant "continued to threaten [the trust] with legal action for a variety of reasons, which demonstrates the entire purpose of Section 8.03 of the Trust." The complaint described the complaint as brought "under Section 8.03 to seek and obtain Court settlement of open accounts prior to the final distribution of the Trust, and to obtain a Court ordered release."

¶ 14      Count I of the complaint for "Accounting" stated that the " 'Final Account' contains a full statement of the trust assets, "the recipient of and purpose for all disbursements" from the trust, and "the proposed final application and distribution of the assets of the Trust." Count I

prayed for trial court approval of "all actions taken to date by the Trustee in the administration of the Trust," that the court order distribution of the trust per the terms of the Final Account, the payment of the trustee's attorney fees and costs "as the Court shall deem reasonable and proper" from the trust, discharge of the trustee, termination of the trust, and "such additional relief as the Court deems equitable and appropriate under the circumstances."

¶ 15    Count II sought Declaratory Judgment. Count II alleged that defendant threatened litigation, filed pleadings in this case asserting claims against the trustee for alleged mismanagement, and "made additional threats of more claims against the Trustee for alleged inappropriate expenditures and alleged mismanagement of Trust assets since June 30, 2017." Count II alleged these facts present "an actual case or controversy as to the parties' rights and interests under the Trust, particularly as to the propriety of the Final Account and the proposed final distribution of the Trust under Section 8.03 and the Trustee's release thereafter." The complaint for Declaratory Judgment sought a declaration "that the Final Account and proposed final distribution therein are appropriate and that the Trustee is released and the Trust terminated."

¶ 16    On November 1, 2018, defendant filed a "Second Amended Answer and Counterclaim" to the complaint. The counterclaim was brought by the "Edmund M. Miniat, Jr. Trust."

¶ 17    Defendant admitted that he did not issue any written objection to anything before the trustee commenced this litigation, but stated that, "in this litigation, objections to her behavior have been made." Defendant also admitted writing a letter in December 2016 "in which Defendant advised he would seek permission from the Court to claim against Trustee individually for losses to the estate." Defendant claimed the following affirmative defenses:

forum *non conveniens*, lack of subject matter jurisdiction, failure to state a claim, and "waiver estoppel *laches* unclean hands" (equitable defenses).

¶ 18    Defendant's equitable defenses were based on, among other things, (1) the trustee's alleged failure to provide trust account information, including that, "[a]fter April 2014, Renee and her lawyers withheld all trust receipt and disbursement information until July 2018, obstructing repeated formal and informal requests;" (2) refusal to distribute trust assets; (3) refusal to distribute trust assets in 2012 and "avoid ongoing expenses" after the trustee completed all specific gifts and the three remainder beneficiaries "all agreed with equal division of the remainder;" (4) "conveyance of leasehold to herself," in reference to a leasehold interest held at a country club and questions surrounding its character as real or personal property; (5) incurring excessive expenses; (6) improvements and maintenance of personal properties; and (7) "waiver and estoppel of trustee objection times."

¶ 19    Defendant specifically alleged that the trustee "commenced her litigation seeking a 'Release' *** only to protect Renee's personal potential liability for breach of her fiduciary obligations;" then, in the amended complaint, the trustee "falsely claimed she initiated the action because of 'threats' of litigation against the Trust." Defendant argued that the trustee "incurred legal expenses to protect herself personally" and by doing so the trustee "breached her fiduciary duty and [that] bars her claim for relief under principles of estoppel and unclean hands." Defendant's answer and affirmative defenses asked the trial court to require the trustee to furnish all trust records, distribute all LP units according to the trust, order the trustee to reimburse the trust for "any expenditures constituting breach of fiduciary duty," and asked for costs "and such other relief justified by the circumstances."

¶ 20    Defendant also stated a counterclaim in the name of the trust, not defendant, for breach of fiduciary duty against Botelho personally, based on the same conduct alleged in defendant's answer. Specifically, the counterclaim pleaded that: "By this counterclaim/crossclaim, Ed Miniat, Jr. Trust requests judgment requiring restitution for the Trust by Renee Botelho for all amounts expended and conveyances made in breach of fiduciary duty; and for other relief appropriate by the circumstances."

¶ 21    On January 14, 2021, defendant filed a "Motion for Unfavorable Evidentiary Presumption" as to "items under Trustee's control which she refused to produce" and "any others for which Trustee has concealed information." On July 21, 2021, the trial court construed defendant's motion (and another motion related to discovery) as "untimely motions to reconsider" and denied the motion(s).

¶ 22    On July 11, 2022, the case proceeded to a bench trial. On October 25, 2022, following trial, the trial court entered an extensive "Trial Order" detailing its findings and judgments. At the time of trial, the LP was the only trust asset. The other trust assets had been distributed pursuant to the terms of the trust, and the trustee "admitted to expending the cash that was held by the Trust *** on attorneys' fees in this litigation." The court found that beginning in 2012, the trustee sought to have defendant, Dieckmann, and their children "execute a global release of claims *** in anticipation of distributing the remaining assets of the Trust." The Trial Order found that the trustee "conditioned distribution of the remainder of the Trust on execution of the global release ***."

¶ 23    Regarding defendant's claims against Botelho individually, the trial court noted that the docket does not reflect that the substitution of the trust as the counter-plaintiff was done with leave of court or that there was any objection thereto. The court noted that defendant

"unequivocally testified, and argued in closing argument, that the Trust is the claimant." The court also noted that since "Botelho, as [an] individual, was not previously a party, the claim is more appropriately identified as a third-party claim," and the court identified it as such. However, the court found that "the Trust lacks standing to bring the third-party claim against Botelho, either as Trustee or individually. The Trust's third-party claim necessarily fails."

¶ 24    The trial court identified the trust provisions at issue and the issues before the court. One such provision is Section 10.13, titled "Controlling Law" and which provides that "the construction of [the trust] *** shall be determined in accordance with the laws of Florida." The court found that it would apply Florida law to interpret the trust.

¶ 25    The trial court found that the settlor of the trust intended to give the trustee broad discretion to act for the benefit of the trust and to shield the trustee from liability for such good faith actions taken in her capacity as trustee, but not for any activities undertaken by the trustee "with reckless indifference to the purpose of the Trust or the interests of the beneficiaries."

¶ 26    The trial court found that the trustee "failed to prove (or plead) the necessary elements supporting her action in accounting, and thus, [the trustee] is not entitled to recover on her action for accounting." The trial court found that the trustee sought "a release of liability for all activities undertaken by her as trustee" based on (1) section 8.11 of the trust, and (2) the fact no beneficiary objected to the last accounting the trustee provided (or any others), and thus under section 8.02, titled "Accountings," the beneficiaries are deemed to have approved the last accounting and the trustee is entitled to a release of liability for all activities covered by that last accounting.

¶ 27    Section 8.02 reads, in pertinent part, as follows:

"Accountings. *** Unless court proceedings on the account are commenced within three months after the account is sent, the account shall bind and be deemed approved by all of the following beneficiaries who have not filed written objections to the account with the trustee within three months after the account is sent, and the trustee shall be deemed released by all such beneficiaries from liability for all matters covered by the account [(hereinafter, the "waiver" provision)] ***."

¶ 28     Section 8.11 is an "exoneration clause" that reads, in pertinent part, as follows:

"Exoneration of Trustee. Any individual trustee acting in good faith shall not be liable for any act or omission. No trustee shall be liable for any act or omission of another trustee."

¶ 29     The trial court initially found that "Florida courts enforce exculpatory clauses, [citations.]" The court found that section 8.02 is superfluous to section 8.11 and focused on whether certain of the trustee's complained-of activities by defendant were undertaken in bad faith. The court found:

(1)     There was no evidence the trustee failed to provide annual accountings in bad faith and that the trustee is entitled to a release of liability for that failure.

(2)     The trustee did not act in bad faith by bringing this lawsuit, because

a.      The "threat of litigation *** may be an open account" under section 8.03 of the trust.

b.      "The evidence presented at trial supports [the trustee's] interpretations of [defendant's] statements as threats [of litigation.]"

c.      The trustee could have brought this suit in the absence of section 8.03 based on other provisions of the trust and Florida law. "[W]hether or not a dispute between a trustee and a beneficiary is an 'open account' is not determinative of the issue of whether a trustee may seek a declaration of no liability in the face of threats of litigation."

d.      By filing the complaint the trustee did not seek to protect herself at the expense of the trust. Rather, the evidence supports the trustee's claim that the trustee "sought protection of the Trust from liability" based on defendant's threats of litigation "against the Trustee related to the Trustee's management of Trust assets," for which the trustee would be entitled to pay attorney fees from the trust.

e.      The lawsuit sought more than a declaration exonerating the trustee "from any liability for her actions as Trustee;" the lawsuit also sought distribution of the trust assets and termination of the trust.

(3)      "The evidence and documents filed in this case support [defendant's] claim that [the trustee] ignored and obstructed [defendant's] requests for documents." Therefore, the trustee "is not entitled to a release of liability for obstructing [defendant's] requests for information."

(4)      Defendant failed to prove the attorney fees the trustee incurred were excessive, "other than those incurred in obstructing [defendant's] access to records."

(5)      Defendant failed to prove the trustee acted in bad faith or with reckless indifference to the interests of the beneficiaries by assuming a leasehold estate to property owned by a country club and leased to the settlor. The court expressly noted the "dearth of evidence concerning the leasehold" and the fact defendant "presented no

evidence of the terms of the leasehold, nor did he provide the Court with legal argument or authority that [the trustee] made an improper transfer."

(6)    Defendant failed to prove the trustee acted in bad faith or with reckless indifference to the interests of the beneficiaries by paying allegedly excessive and unreasonable administrative expenses. The court again expressly noted that defendant "presented no evidence concerning these expenses nor any expert testimony setting forth what the expenses reasonably should have been."

(7)    Defendant failed to demonstrate that the trustee "did not actually believe that moving the situs [of the trust] to Illinois was in the best interest of the Trust" nor evidence or authority to support defendant's argument that the transfer "resulted in an expense to the Trust that would not have been incurred if the Trust situs was not moved."

(8)    Defendant failed to prove that the trustee spent trust funds on personal expenses (because the trustee "credibly testified that each of [the contested] expenses was incurred prior to the death of the Settlor").

¶ 30    The trial court went on to find that defendant's remaining affirmative defenses did not defeat the trustee's claims for relief. Specifically, as to an alleged lack of subject matter jurisdiction, the trial court found that "[t]his argument was previously made by [defendant] and rejected by the Court" in a February 16, 2018 order.

¶ 31    The trial court found that the trustee is exonerated from her activities taken in good faith; thus, the trustee "is entitled to a release for all activities undertaken by her as Trustee except for her obstruction of [defendant's] requests for information and payment of directly-resulting attorney's fees." The court expressly found that "the remaining activities undertaken by Botelho were undertaken in good faith." The court found that the distribution of the remaining trust assets

proposed in the last accounting "is consistent with the Settlor's intent and is equitable." The court found that the trustee is entitled to termination of the trust at the conclusion of this matter, and that the distribution of Botelho's share of the trust assets will be reduced by the amount of attorney fees for work "which was designed to obstruct, or had the effect of obstructing, [defendant's] access to information to which he was entitled as beneficiary." The trial court found that it was defendant's burden to prove which attorney billing entries relate to the obstruction.

¶ 32     On March 7, 2023, the trial court entered a "Supplemental Trial Order" on the matter of the attorney fees the trustee must reimburse to the trust. The Supplemental Trial Order noted that the trial court had concluded that defendant "had not presented evidence at trial of the amount of Trust monies spent on attorneys' fees in perpetuating the obstruction [of defendant's access to certain trust information to which he was legally entitled], and [the court] allowed briefing on this issue." The court restated its precise instructions for the posttrial briefing of this issue, then stated the multiple ways in which defendant failed to comply, including, but not limited to, providing three binders of information that the court described as "the very definition of voluminous, disorganized and unidentified." The court concluded that it would "disallow only those charges that demonstrate obstruction on their face or that are supported by clear and concise evidence." The court identified the charges that it disallowed the trustee from expending trust monies on in a chart identifying the date, time billed, and billing attorney. The Supplemental Trial Order directed the trustee's attorney to provide the court and defendant with a verified schedule of the attorneys' hourly rates and a verified calculation of the total amount to be withheld.

¶ 33    On February 23, 2024, the trial court granted defendant's motion to reconsider on the issue of the attorney fees in part, identifying certain billing entries identified in the motion to reconsider that would be disallowed as payable by the trust. The court's February 23rd order ordered that, "to finalize this case, [the trustee] will submit a proposed distribution of the Trust's assets in writing on or before March 1, 2024. Defendant shall submit a written response to the same on or before March 15, 2024." The court set the matter for a status and hearing and further ordered that on the status date, "the Court will also hear discussion of the reasonableness of [the trustee's] attorneys' fees and costs."

¶ 34    On June 24, 2024, as a result of the  parties' briefing on a proposed distribution plan and an order from the trial court on March 28, 2024, directing the parties to brief the issue of whether the court needs to make a reasonableness determination in regard to the attorney fees the trustee properly incurred, the trial court entered an order finding that the court "need not assess reasonableness of fees before granting reimbursement to trustee." In briefing on the proposed distribution, an issue had arisen with regard to a loan taken in the name of the trust that was "principally used to pay the Plaintiff's legal fees." The court's June 24, 2024 order found that the LP units should be liquidated to distribute the trust assets and that trust funds should be used to pay loan expenses. The court ordered that any remaining funds be disbursed equally to the beneficiaries.

¶ 35    On October 18, 2024, the trial court continued the trustee's motion to provide an accounting of the trust and to specify how many LP units are required to reimburse *the trustee* for allowable attorney fees. The court ordered an additional $100,000 in LP units placed in escrow for attorney fees in the event of an appeal which, absent an appeal would have been distributed in equal thirds to the trust's beneficiaries.

¶ 36    On November 25, 2024, the trustee filed a "Motion for Final Accounting" and on December 9, 2024, defendant filed a "Declaration Re: Motion for Final Accounting." On January 24, 2025, the trial court entered a Final Judgment Order. The court's order distributed the LP units, $248,182.838 to the trustee and $171,232.961 to defendant and Dieckmann, each. The court also ordered $100,000.00 in LP units held in escrow. The court ordered that after the distribution is accomplished by the trustee, the trustee is discharged, the trustee "is provided with the release awarded to her in the Court's Trial Order, and the Trust is terminated."

¶ 37    This appeal followed.

¶ 38                              ANALYSIS

¶ 39    This is an appeal from a judgment on a complaint for declaratory judgment following a bench trial. Generally,

> "[i]n a bench trial, the circuit court has the primary obligation to weigh evidence and determine disputed issues of fact, and we must defer to those findings of fact unless they are against the manifest weight of the evidence. [Citation] 'A factual finding is against the manifest weight of the evidence when the opposite conclusion is clearly evident or the finding is arbitrary, unreasonable, or not based in evidence.' [Citation.]" *Nelson v. Brewer*, 2019 IL App (1st) 173143, ¶ 53.

¶ 40    The specific "standard of review applicable to a declaratory judgment depends on the nature of the question presented. [Citation.] Questions of fact are reviewed under the manifest-weight-of-the-evidence standard, but questions of law, like the interpretation of [an] agreement, are reviewed *de novo*." *In re Marriage of Solano*, 2019 IL App (2d) 180011, ¶ 73. The

construction of a trust is a question of law which we review *de novo*." *Schroeder v. Sullivan*, 2018 IL App (1st) 163210, ¶ 25.

¶ 41     Initially, we address defendant's argument that the trustee should not have been allowed to pursue this complaint at all, first, because the trial court abused its discretion by justifying the trustee's lawsuit based on the threat of litigation against the trust when the "beneficiaries never threatened [the] Trustee with anything." Defendant asserted that the trial court erred in finding that defendant's communications constituted threats of litigation. Specifically, defendant contended that such a finding is against the manifest weight of the evidence.

¶ 42     The trustee responded that defendant failed to provide proper evidentiary support for this argument and failed to demonstrate that the trial court abused its discretion in finding that the evidence supported interpreting defendant's communications with the trustee as threats of litigation, which in turn would permit the trustee to file this complaint pursuant to section 8.03 of the trust. The trustee argued that the trial court's "discretionary findings *** were well documented in the trial order."

¶ 43     The determination of how the trustee construed defendant's communications, and the interpretation of the meaning of those communications, presented a question of fact. See *Jay v. United Defense Industries, Inc.*, 162 Ill. App. 3d 1071, 1079 (1987) (finding, in contract dispute, that "conflicting interpretations of the evidence need to be resolved by the trier of fact"), *Haberer v. Village of Sauget*, 158 Ill. App. 3d 313, 320 (1987) (finding material question of fact as to what force and effect communications carried with regard to control of work). The trial court's findings on a question of fact will not be reversed unless they are against the manifest weight of the evidence. *Nelson*, 2019 IL App (1st) 173143, ¶ 53.

¶ 44    On appeal defendant simply offered his own interpretation of the meaning of the emails. The trustee was correct that the trial court provided a fulsome explanation for its finding that defendant's communications threatened litigation, including defendant's demands for information, questioning of the trustee's actions, and offer of a less-than-full release only *after* distributing the trust assets. The trial court's explanation of its finding was based on the evidence and was reasonable; and the opposite conclusion—that defendant was not threatening litigation—was not clearly evident.

¶ 45    The trial court, as the trier of fact in a bench trial, is responsible for weighing evidence and resolving disputed factual issues. Its findings are entitled to deference unless the opposite conclusion is clearly evident or the finding is arbitrary, unreasonable, or unsupported by evidence. In this case, the trial court determined that the communications from defendant could reasonably be interpreted as threats of litigation, and that this interpretation was supported by the evidence presented. Therefore, defendant's assertion that the trial court's finding is contrary to the manifest weight of the evidence fails.

¶ 46    Regardless, the interpretation of defendant's communications as threats of litigation was only relevant to whether those threats constituted an "open account" that would allow the trustee to file a lawsuit under the authority of section 8.03 of the trust. However, the trial court also found that defendant "incorrectly presumes that the Trustee's authority to bring this suit is limited to reliance on § 8.03." The court held it was not. The trial court cited three trust provisions and three Florida statutes in support of the trustee's authority to file this lawsuit. The court concluded that the trustee "could have brought this lawsuit even in the absence of § 8.03." For that reason, as well as defendant's failure to demonstrate an abuse of discretion, defendant's

argument concerning the trustee's ability to pursue this complaint and the trial court's "justification" for the lawsuit, fails.

¶ 47    Next, we address defendant's argument that the trial court erroneously granted the trustee declaratory relief releasing the trustee for past conduct. Defendant argued that the "doctrine of non-liability for past conduct" barred the trial court from reviewing the trustee's past conduct to grant her immunity. Defendant argued that by seeking a declaratory judgment seeking immunity for past conduct, the trustee deprived the beneficiaries of their right to decide whether, when, and where to file their own lawsuit against the trustee. Defendant also argued that the trial court did not have authority to confer immunity on the trustee.

¶ 48    In *Travelers Indemnity Co. of America v. Townes of Cedar Ridge Condominium Ass'n*, 2022 IL App (3d) 200542, ¶ 10, the court wrote as follows:

> "A declaratory judgment action allows the court 'to address a controversy one step sooner than normal after a dispute has arisen, but before steps are taken which would give rise to a claim for damages or other relief.' [Citation.] *** A declaratory judgment action is not the vehicle for a declaration of nonliability for past conduct, as it 'deprives the potential plaintiff of his right to determine whether he will file, and, if so, when and where.' [Citation.]" *Travelers Indemnity Co. of America*, 2022 IL App (3d) 200542, ¶ 10 (quoting *Howlett v. Scott*, 69 Ill. 2d 135, 143 (1977), *Adkins Energy, LLC v. Delta-T Corp.*, 347 Ill. App. 3d 373, 378 (2004)).

¶ 49    Defendant's arguments that the trial court did not have authority to confer "immunity for past conduct" on the trustee fails. First, the trial court's judgment that the trustee "is exonerated from her activities taken in good faith" is based on section 8.11 of the trust. Section 8.11 states:

"Any individual trustee acting in good faith shall not be liable for any act or omission." The trial court found that the trustee sought exoneration under section 8.11 in addition to the waiver provision in section 8.02, and the court found that "Florida courts enforce exculpatory clauses" unless the trustee undertook the breach of the trust in bad faith or with reckless indifference to the beneficiaries. Defendant did not challenge the trial court's construction of section 8.11 as exonerating the trustee for all of her actions taken in good faith. Additionally, the trial court's cited authorities support its conclusion. See *Sanislo v. Give Kids the World, Inc.*, 157 So. 3d 256, 260 (Fla. 2015) ("as a general proposition, unambiguous exculpatory contracts are enforceable unless they contravene public policy"), Fla. Stat. Ann. § 736.1011 (West) ("(1) A term of a trust relieving a trustee of liability for breach of trust is unenforceable to the extent that the term: (a) Relieves the trustee of liability for breach of trust committed in bad faith or with reckless indifference to the purposes of the trust or the interests of the beneficiaries."), see *Powell v. Cocowitch*, 94 So. 2d 589, 591 (Fla. 1957). The trial court had the authority to grant the relief provided in this case.

¶ 50     Second, contrary to defendant's argument in reply, there was a justiciable controversy regarding the release. The trustee's complaint for declaratory judgment claimed that "there exists an actual case or controversy as to the parties' *** interests under the Trust, particularly as to the *** proposed final distribution *** and the Trustee's release thereafter." The trustee's "rights and interests" under the trust included the trustee's rights and interests under section 8.11 of the trust. Thus, a controversy existed between the parties. See *Adkins Energy, LLC* 347 Ill. App. 3d at 378 ("Delta-T clearly threatened litigation, thus creating an actual controversy. See also *Roland Machinery Co. v. Reed,* 339 Ill. App .3d 1093, 1099 (2003) ('An expression of intent by one party to take legal action against another can be the basis of an actual controversy ripe for

declaratory relief' ")). Therefore, the trustee properly invoked the trial court's jurisdiction to grant the release.

¶ 51 Separately, defendant implied that the trustee did not act in good faith, and thereby suggested that the trustee was therefore not entitled to exoneration, because the trustee elected to file this lawsuit rather than rely on the "waiver" provision of section 8.02. The record and the Trial Order refute this argument. The trustee's amended complaint alleged, in relevant part, in its general allegations, as follows:

"19. In the midst of these accusations and allegations on behalf of [defendant] and his children, the Trustee nonetheless dutifully prepared detailed accountings for the Trust beginning in 2012 which were mailed to all of the Remainder Beneficiaries for approval to secure a release from each Remainder Beneficiary in tandem with a proposed final distribution of the Trust.

20. The Trustee did so because Section 8.03 of the Trust *** states: *** the trustee shall have the right to require settlement of any open accounts *** either by the written approval and release of all beneficiaries *** or, if the releases cannot be obtained, by court settlement of the open accounts.

21. As more fully set forth below, only [defendant and his children] failed to approve each accounting and equally failed to execute a final release of the Trustee. Accordingly, per Section 8.03 of the Trust, the Trustee's only other recourse to achieve a release was to file the instant action.

* * *

28. The Trustee has never received any formal objections from [defendant and his children] to any of the aforementioned final accounts submitted to them.

* * *

36. Accordingly, the Trustee filed the instant action in 2014 under Section 8.03 to seek and obtain Court settlement of open accounts prior to the final distribution of the Trust, and to obtain a Court ordered release, as [defendant and his children] prevented both. [(In a footnote to this allegation, the trustee wrote: 'Section 8.03 is not self-executing and cannot therefore operate by waiver as Section 8.02 can; therefore, the instant action is the only way to invoke it.')]"

¶ 52    The trial court determined that the trustee did not act in bad faith by initiating the present lawsuit. We conclude the court's finding is not against the manifest weight of the evidence. Upon reviewing the evidence presented during the trial, the court found that the trustee maintained the argument that, in situations where no beneficiary objected to any accounting or commenced court proceedings, section 8.02 of the trust dictates that beneficiaries are considered to have approved the Fourth Accounting. As a result, the trustee asserted entitlement to a release of liability for all actions covered by the Fourth Accounting.

¶ 53    Despite this, the trial court concluded that the immunity provided in section 8.02 is redundant in light of the immunity afforded by section 8.11. The trial court also addressed defendant's assertion that the trustee acted in bad faith, and claimed that she should not be entitled to a release of liability and that section 8.02's immunity did not apply. The court found that the trustee's lawsuit sought more than just a judicial declaration exonerating her from any liability for her actions as Trustee; her complaint also requested the distribution of trust assets and the termination of the trust. Additionally, the court noted that both Florida and Illinois law require judicial approval for the termination of a noncharitable irrevocable trust, even if all

- 21 -

beneficiaries consent. Therefore, defendant did not demonstrate that the lawsuit would have been unnecessary had the trustee relied exclusively on section 8.02.

¶ 54    The test of whether the trial court's factual finding is against the manifest weight of the evidence is whether there is any evidence in the record to support its finding. *Aliano v. Sears, Roebuck & Co.*, 2015 IL App (1st) 143367, ¶ 12. The court's judgment reflected that it considered the trustee's actions, including any potential for waiver under section 8.02. Based on the language of sections 8.02 and 8.03 and the allegations in the amended complaint, the trial court could reasonably find that the trustee did not act in bad faith by attempting to circumvent section 8.02, as defendant suggests. The evidence provided a reasoned basis for the trial court's judgment that the trustee did not pursue this lawsuit in bad faith and, therefore, did not breach a duty to protect trust assets. Defendant did not establish that the trial court abused its discretion in granting the trustee a release.

¶ 55    Next, defendant argued that the trial court "exceeded its subject matter jurisdiction by ordering reimbursement to [Botelho] personally through additional LP units" because the complaint did not specifically request "any equitable apportionment of LP units; nor reimbursement for attorney's fees; nor loan interest." Defendant argued that relief is "beyond that set forth in the pleadings [and] exceeds the court's subject matter jurisdiction and is void." In support of his argument defendant relied on *City of Chicago v. Chicago Board of Education*, 277 Ill. App. 3d 250, 261 (1995), in which the court wrote that "[t]he pleadings of the parties frame the issues in controversy and circumscribe the relief that the court is empowered to order." *City of Chicago*, 277 Ill. App. 3d at 261. However, "[c]omplaints are to be liberally construed with an eye toward doing justice between the parties." *Wong v. Stevens*, 216 Ill. App. 3d 299, 301 (1991).

- 22 -

¶ 56    The language in the complaint supported finding that the trial court did not award unpled or unrequested relief. Defendant's reliance on *City of Chicago* is misplaced. The *City of Chicago* opinion supported finding that the trial court did have subject matter jurisdiction in this case. There, the court recognized that,

> "the subject matter jurisdiction of the circuit courts of this State is the power to hear a given class of case. As derived from the Illinois Constitution, that jurisdiction extends to all justiciable matters with only limited exceptions not pertinent to this case. (Ill. Const. 1970, art. VI, sec. 9.) A justiciable matter is one which involves the adverse legal interests of the parties to an action. ([Citation.]) In application to any particular case, the subject matter jurisdiction of the court is the power to hear and determine that controversy." *City of Chicago*, 277 Ill. App. 3d at 261.

¶ 57    "Generally, a 'justiciable matter' is a controversy appropriate for review by the court, in that it is definite and concrete, as opposed to hypothetical or moot, touching upon the legal relations of parties having adverse legal interests." *Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 199 Ill. 2d 325, 335 (2002).

> "So long as a claim meets the requirements for justiciability, it will be sufficient to invoke the court's subject matter jurisdiction, even if the claim is defectively stated. [Citation.] The *only* consideration is whether it falls within the general class of cases that the court has the inherent power to hear and determine. If it does, then subject matter jurisdiction is present." (Emphasis in original and internal quotation marks omitted.) *McCormick v. Robertson*, 2015 IL 118230, ¶ 23.

¶ 58　Here, there was a justiciable matter in the form of an actual controversy between the parties. The trial court had the power to hear and determine that controversy under the Illinois constitution. Ill. Const. art. VI, § 9 ("Circuit Courts shall have original jurisdiction of all justiciable matters."). The complaint stated: "A declaration of the parties' rights by this Court *** will resolve the controversy, specifically, that the Final Account and proposed final distribution therein are appropriate and that the Trustee is released and the Trust terminated." Defendant placed dispositive weight on the specific prayers for a declaration that the "Final Account" and "final distribution" are appropriate, and that the trustee is released and the trust terminated; but defendant ignored the prayer for a "declaration of the parties' rights." As previously stated, the complaint sought distribution of the Trust assets and termination of the Trust. Before the trust could be terminated and the LP units distributed, the trust was required to provide compensation for attorney fees incurred in good faith as part of the "parties' rights" under the trust. We find that, under the rule of liberal construction, count II did incorporate a prayer for the distribution of the LP units and reimbursement for attorney fees, and it was sufficient to justify the trial court's award. We find that the trial court had subject matter jurisdiction.

¶ 59　Next, defendant argued the trustee committed a breach of fiduciary duty by "conditioning a trust distribution *** on a demand for complete immunity." Defendant cited *Callaway v. Willard*, 351 Ga. App. 1 (Court of Appeal of Georgia 2019), in support of his argument that the trustee's act of seeking "complete immunity" before distributing the trust was a breach of fiduciary duty. The trustee responded that defendant's reliance on *Callaway* was misplaced, because that decision was based on Georgia statutory law and is therefore inapplicable here, and because the trust in *Callaway* did not contain a provision similar to section 8.03, which the

- 24 -

trustee argued provided her "the ability to seek a release before distribution." Furthermore, there was no exculpatory clause in the trust in *Callaway*.

¶ 60    The trustee in this case was correct that the Georgia court found that the trial court in that case did not err in finding that the trustee violated his fiduciary duties based on the language of the trust ("setting such a precondition to distribution of Trust property violates the plain terms of Section 4 (f) of the Trust" (*id*., at 12)), and a Georgia statute ("under OCGA § 53-12-246 (a), a trustee cannot condition performance of a mandatory fiduciary duty on a release from liability" (*id*., at 12)). *Callaway*, 351 Ga. App. at 12-13. The Georgia court also found that the trustee's conduct was for the trustee's "sole benefit." *Id*., at 13.

¶ 61    In this case, the trial court addressed the trustee's entitlement to a release from liability and defendant's argument that certain activities by the trustee were undertaken in bad faith, "and as such, she is not entitled to a release of liability."

> "In determining whether a trustee acted in bad faith, the trial court makes a factual finding that will not be disturbed unless it is against the manifest weight of the evidence. [Citation.] Our role is not to reweigh the evidence or assess witness credibility to determine whether we would have drawn different conclusions from the evidence. [Citation.] Rather, the trial court's decision will be set aside only 'when an opposite conclusion is apparent or when the findings appear to be unreasonable, arbitrary, or not based on the evidence.' [Citation.]" *Ferguson v. Heath*, 2024 IL App (3d) 230681-U, ¶ 35.

¶ 62    Contrary to *Calloway*, the trial court in this case found, based on the language of the trust and Florida law, that the settlor intended to absolve the trustee from all liability for her acts as trustee, "short of those taken in bad faith or with reckless indifference." The trial court found that

the trustee did not act in bad faith in seeking a release from liability because the trustee "did not seek to protect herself at the expense of the Trust," but instead, "sought protection of the Trust from liability." The court cited numerous provisions of the trust granting the trustee "broad powers *** to act in what she perceived to be the best interest of the Trust." The trial court found that the evidence supported the trustee's perception of defendant's communications as threats of litigation and that "the threat of litigation by trust beneficiaries against the Trustee for trust mismanagement may be an open account under § 8.03 of the Trust." The trust would be responsible for attorney fees if there was litigation. Therefore, unlike *Calloway*, the trustee had authority to seek a release of liability without violating any fiduciary duty. The trial court found that "the evidence does not support a claim that Botelho consciously acted in the wrong because of dishonest purpose or moral obliquity, or affirmatively operated with furtive design or ill will;" and, therefore, she "did not act in bad faith by bringing the instant lawsuit." The court's finding is not arbitrary and is based on the evidence; and it is a reasonable conclusion. The opposite conclusion is not clearly apparent. Therefore, the trial court did not abuse its discretion.

¶ 63 Defendant separately argued that "[s]ection 8.03 provides no authority for Trustee to withhold an inheritance gift until the beneficiary or court grants Trustee complete immunity" because a gift to a beneficiary is not an "open account." "Review of the terms of a trust agreement and its proper interpretation is a question of law subject to *de novo* review." *Schlossberg v. Estate of Kaporovsky*, 303 So. 3d 982, 985 (Fla. Dist. Ct. App. 2020), *Schroeder v. Sullivan*, 2018 IL App (1st) 163210, ¶ 25 (the construction of a trust is a question of law we review *de novo*).

¶ 64 Defendant relied on the definition of an "open account" in one Florida case, *Farley v. Chase Bank, U.S.A., N.A.*, 37 So. 3d 936, 937 (Fla. Dist. Ct. App. 2010). *Farley*, however, was

not construing any language in any agreement. Instead, that case was distinguishing between two causes of action to address the defendant-appellant's argument in that case that the plaintiff had failed to establish an element of their claim for an account stated (an element the court found the plaintiff was not required to prove under the correct cause of action). *Farley*, 37 So. 3d at 93 (" 'Actions for an account stated and an open account are two distinct causes of actions requiring different burdens of proof.' "). We find that the Florida court's definition of "open account" in *Farley* has no application in this case. *Pennzoil Co. v. FERC*, 645 F.2d 360, 386 n54 (5th Cir. 1981) ("The same words, in different settings, may not mean the same thing; parties do not necessarily endow statutory language in a contract with the scope of the statute,").

¶ 65    The settlor's intent controls the interpretation of the trust. *Bacardi v. White*, 463 So. 2d 218, 221 (Fla. 1985) ("one of the basic tenets for the construction of trusts is to ascertain the intent of the settlor and to give effect to this intent"). In this case, the trial court construed the meaning of "open account" in section 8.03 to include "the threat of litigation by trust beneficiaries against the Trustee for trust mismanagement." The court explained its reasoning: "a trustee is entitled to pay attorneys' fees from the trust assets in litigation involving fiduciary disputes. [Citation.] Were the Trustee to distribute the Trust assets without a release, she would not have the ability to use Trust assets to pay attorneys' fees in the event the beneficiaries brought a claim against her as Trustee after distribution." The court also found that the exoneration under section 8.11 may be a defense but would not "prevent the filing of a lawsuit in the first instance." The court specifically found that this "interpretation of § 8.03 is bolstered by the Settlor's apparent desire to exonerate the Trustee from liability."

¶ 66    In this case,  the settlor's intent in including the "open account" provision in the trust refuted defendant's narrow reading. The term "open account" in section 8.03 can reasonably be

construed to encompass any potential liabilities that must be paid from the trust, whether or not they are for "potential debts of providers" as defendant claims, or for attorney fees for potential litigation. Under section 8.03, "if the releases cannot be obtained," the trustee "shall have the right to *** court settlement of the open accounts." The trial court's construction of the trust was consistent with the settlor's intent, stated in section 8.03, that the "trustee's reasonable fees and expenses (including attorneys' fees) attributable to approval of the trustee's accounts shall be paid by the trust," and in section 8.11 that the trustee "acting in good faith shall not be liable for any act or omission."

¶ 67    The trial court did not abuse its discretion in finding that the trustee honestly and reasonably construed defendant's communications with her as threats of litigation against her as trustee. Therefore, we find that the trial court did not abuse its discretion in finding that the trustee did not act in bad faith in initially brining this lawsuit under the authority granted to the trustee by section 8.03.

¶ 68    Next, defendant argued that the trial court erred in reimbursing the trustee for attorney fees because the trial court erred in finding that the attorney fees were reasonable where (a) the trustee did not have to sue, but could have relied on the "waiver" provision in section 8.02, (b) the litigation did not benefit the trust because defendant did not threaten litigation. (c) the trustee only sued to protect herself personally, (d) count II of the trustee's complaint "did not request attorney's fees," and (e) the trial court erred in finding it did not need to determine whether the fees were reasonable. Defendant also challenged three specific categories of charges—those involving his children, those for trial preparation, and those for a protective order regarding the trustee's attorney's fees—as unreasonable and/or not benefiting the trust.

¶ 69    The trustee responded that the trial court found the attorney fees were necessary for the administration of the trust. The trustee argued that defendant's authorities in support of his arguments were inapplicable to this case. The trustee responded that the trial court properly relied on Florida caselaw to find that it did not need to make a separate determination that the trustee's attorney fees were reasonable but only needed to determine whether they were incurred in bad faith or reckless indifference to the trust and/or the beneficiaries.

¶ 70    Each of defendant's stated reasons for finding that the fees were not reasonable and therefore the trial court erred in its award of attorney fees has been addressed and rejected. We found the trial court's judgment that defendant threatened litigation and therefore the trustee did not act in bad faith in filing this lawsuit rather than relying on section 8.02, because section 8.02 would not preclude the beneficiaries from suing the trustee and causing the trust to incur attorney fees, was not against the manifest weight of the evidence or an abuse of discretion. We also found that, based on the foregoing findings and the fact the lawsuit also sought to terminate the trust, that the findings that the trustee did not sue solely for her own benefit and that the litigation did benefit the trust, are not against the manifest weight of the evidence. We addressed the trial court's award of attorney fees under count II for declaratory judgment and found that the trial court did not abuse its discretion in construing that count to request the relief the trial court provided.

¶ 71    On the question of whether the trial court was required to make an express finding that the remaining fees were reasonable, we find defendant's attempt to distinguish the Florida caselaw on which the trial court relied fails. In its June 24, 2024 order, the trial court found that it did not "need to assess reasonableness of fees before granting reimbursement to trustee. No language in the [trust] limits fee reimbursement to reasonable amounts, as appears in *Demircan*

- 29 -

*v. Mikhaylov*, 306 So. 3d 142 (Fla. 2020)." On appeal, defendant argued that the trial court misinterpreted *Demircan* because that case "interpreted a business trust with altogether different indemnification and reimbursement protections, not present in our circumstance." The trustee responded that the language in the trust in this case is substantively identical to the language in *Demircan*.

¶ 72     In *Demircan*, the District Court of Appeal of Florida found that the trial court "wrongly denied attorney's fees and costs mandated by the trust's terms." *Demircan*, 306 So. 3d at 149. The trust in that case directed that no fees incurred by a trustee would be disallowed unless the trustee acted in bad faith or with reckless indifference to the trust or the beneficiaries. *Id*. The court concluded that "[a]bsent a finding of bad faith or reckless indifference on the former trustee's part, the trial court erred in denying her reasonable attorney's fees pursuant to the terms of the trust." *Demircan*, 306 So. 3d at 150. In this case, the trust contains similar directions that "all" attorney fees attributable to approval of the trustee's accounts "shall" be paid by the trust. The trust in this case also contains similar language that makes "clear that the fees and costs intended are to be 'reasonable.' " *Id*., at 149. The trial court properly concluded that under Florida law, "[a]bsent a finding of bad faith or reckless indifference on the former trustee's part," the trial court may not deny "reasonable attorney's fees pursuant to the terms of the trust." *Demircan*, 306 So. 3d at 150. The *Demircan* court did not require a separate hearing on the reasonableness of the fees; rather, the court could make that determination.

¶ 73     Further, defendant's reliance on *In re Guardianship of Bloom*, 295 So. 3d 1255, 1259 (Fla. Dist. Ct. App. 2020), is misplaced. That case did not construe any trust language. Furthermore, *In re Guardianship of Bloom* is distinguishable because the party purportedly serving as trustee " 'was not legally entitled to be paid that money in light of the Court's orders,

and he was never legally the successor trustee.' " *In re Guardianship of Bloom*, 295 So. 3d at 1258. The Florida court affirmed the trial court's finding that "[d]espite Soss's argument that he was entitled to compensation for acting as a '*de facto*' trustee, *** it would be an abuse of *** discretion to award Soss compensation 'when he knew or should have known that he should not have made the payments because he was not an appropriate trustee.' " *Id*., at 1259.

¶ 74     When reviewing the trial court's judgment under a manifest weight of the evidence standard, "all reasonable presumptions are made in favor of the trial court, the appellant has the burden to affirmatively show the errors alleged, and the judgment will not be reversed unless the findings are clearly and palpably contrary to the manifest weight of the evidence." *Estate of Vail v. First of America Trust Co.*, 309 Ill. App. 3d 435, 438 (1999). Here, the trial court's finding that the remainder of the attorney fees were not excessive was based on the facts of record. The trial court was aware that the trust provided that it would only pay the trustee's "reasonable fees and expenses (including attorneys' fees)." Defendant failed to establish that the trial court did not adhere to that limitation or that the fees were not reasonable. The trial court specifically addressed defendant's argument that the trustee incurred excessive fees by unnecessarily litigating against his children. The court found that "at least as to two of [defendant's] children, there was never a judicial determination that [the trustee's] claim against them lacked merit." The court also found that it was possible that some of the fees related to defendant's children would have been expended regardless of her lawsuit against them." As for defendant's other specific claims of error regarding fees for trial preparation and a protective order, defendant complained about the lack of detail in the billing records and that the protective order benefitted the attorneys and not the trust. Defendant failed to demonstrate, however, that the trial court abused its discretion in finding that those fees were not incurred in bad faith and, therefore, not

"excessive by definition." Defendant failed to affirmatively show the trial court's judgment on attorney fees was against the manifest weight of the evidence. *Lenny Szarek, Inc. v. Workers' Compensation Comm'n*, 396 Ill. App. 3d 597, 606 (2009) ("the appellant *** bears the burden of demonstrating reversible error on appeal").

¶ 75    Defendant also argued that Florida law placed the burden on the trustee to establish the reasonable necessity of the fees and the benefit to the trust, but the trial court placed the burden on defendant to prove the fees were excessive. The Trial Order found that the trustee was not released from liability for obstructing defendant's access to information and that the trustee was not entitled to expend trust funds on attorney fees for attorney work designed to or that had the effect of obstructing defendant's access. The trial court did not place the burden on defendant to prove the fees were unreasonable. The trial court only placed the burden on defendant to make the determination of which fees were to be excluded per the trial court's order. The court found that because that specific issue "arises from [defendant's] unclean hands affirmative defense, it is [defendant] that bears the burden of proving which attorney billing entries relate to the obstruction." "The doctrine of 'unclean hands' is an affirmative defense. *** An affirmative defense is the defendant's burden to plead and prove." (Internal quotation marks and citations omitted.) *Jameson Real Estate, LLC v. Ahmed*, 2018 IL App (1st) 171534, ¶ 85. The trial court properly placed the burden of proving defendant's affirmative defense on defendant. Moreover, in finding that the attorney fees were not excessive, the trial court also relied on its finding that defendant "was at least partially responsible for the amount of attorney's fees incurred by the Trust in this litigation." The court found that defendant did not avail himself of mechanisms to alleviate those fees but instead "arguably churned the litigation, driving up fees." The trial court's partial reliance on defendant's behavior is not equivalent to placing the burden of proof

on defendant. We find no support for defendant's contention that the trial court placed the burden to prove the reasonableness and necessity of the attorney fees on defendant except as necessary to establish defendant's affirmative defense, which was proper. *Jameson Real Estate, LLC*, 2018 IL App (1st) 171534, ¶ 85.

¶ 76    Next, defendant argued that despite finding that the trustee acted in bad faith by refusing to fulfill her obligation as a trustee to provide information concerning the administration of the trust upon the request of a beneficiary, the trial court nonetheless granted reimbursement to the trustee personally. Defendant argued that awarding "extra LP units to Trustee personally after having found a bad faith breach of duty exceeded the court's authority." In support, defendant argued that this court's decision in *Grate v. Grzetich*, 373 Ill. App. 3d 228 (2007), recognized a "*per se* rule preventing a bad faith attorney from recovering  attorney's fees from the trust."

¶ 77    The *Grate* court recognized the rule that "an award of attorney fees to a trustee who breached [their] fiduciary duty to a beneficiary 'constitute[s] an abuse of discretion.' " *Grate*, 373 Ill. App. 3d at 231. The *Grate* court found that the evidence supported finding that the trustee in that case converted trust funds for personal use; therefore, "he was not entitled to have attorney fees incurred during a suit to recover those funds reimbursed from the trust." *Id*. The distinguishing factor which makes *Grate* inapplicable in this case was that the attorney fees at issue in *Grate* pertained only to the conduct that breached the fiduciary duty. In this case, the trial court did disallow any "attorneys' fees for legal work" that breached the trustee's fiduciary duties. Thus, to any extent *Grate* is applicable to this case, the trial court followed it. Defendant's argument fails.

¶ 78    Next, defendant argued that the trial court lacked subject matter jurisdiction to award additional units to Botelho, because the prayer for relief in the complaint only sought approval of

the trustee's last accounting, which distributed the LP shares evenly. Defendant also argued that the trial court erred because the trustee never paid anything herself, but instead, "all of Trustee's attorney's fee invoices were paid either with trust funds available or through funds borrowed in the name of the trust." Defendant argued that if the court had authority to apportion LP units to Botelho personally, the court could not do so without exercising jurisdiction over "beneficiary Dieckmann, US Bank (which issued the loan to the trust that was used to pay attorney fees), and the general partner (Miniat Family Enterprises, Inc., an Arizona corporation). Finally, defendant argued that the trial court used a flawed valuation of the LP units which "underestimated the assets by $900,000.00." The trustee responded that defendant forfeited this argument on appeal because defendant did not raise the issue of awarding LP units to Botelho individually in the trial court.

¶ 79    On November 25, 2024, the trustee filed a "Motion for Final Accounting." In that motion, the trustee attached an exhibit which the motion stated shows "Plaintiff's paid legal fees." The exhibit states a "Total Value of Amounts Owed for Trustee's Professional Fees and Trust Expenses." The Motion for Final Accounting proposed that "of the 590,648,760 total LP units currently held by the Trust, [Botelho] should receive 249,103,718 and [defendant] and [Deickmann] should each receive 170,772,521." On December 6, 2024, defendant filed an "Opposition to Plaintiff's Motion for Final Account." Defendant argued that interest charges reflected in plaintiff's motion exist against the trust and not Botelho personally, thus Botelho "may not claim entitlement to LP units because of interest" or accounting fees. On December 9, 2024, defendant filed a "Declaration Re: Motion for Final Accounting" in which defendant raised a separate question as to whether the trustee's attorney fees included a write-off for an earlier imposed sanction.

¶ 80    On December 10, 2024, the trial court held a hearing. Defendant argued, in part, as follows:

> "MR. MINIAT:· The problem is that she has not paid any attorneys' fees. She borrowed money in the name of the Trust and used that—the funds to pay Fuchs & Roselli. On May 9th, she filed an amendment, and she wanted either repayment of the loan or reimbursement to her for attorneys' fees."

¶ 81    Defendant concluded by arguing that the trial court should only consider and award the specific relief prayed for in the trustee's complaint, which defendant argued was "to divide [the LP units] and distribute them equally, one-third, one-third, and one-third."

¶ 82    On December 11, 2024, the trial court ordered the parties to provide information to substantiate that the write off was applied, "an updated table reflecting the approximately $20,000 in reductions in LP units to be paid to Plaintiff," and "a proposed final order reflecting the approved distributions." On December 23, 2024, the trustee filed a "Supplement in Support of Certain Accounting Items" that included a "table summarizing the proposed distribution of LP units." On January 2, 2025, defendant filed a response to the trustee's supplement. Defendant argued the "trustee used actual trust funds to pay $430,176" and that subtracting that and other amounts leaves the trustee's "reimbursement claim at $183.477." Later in defendant's response, defendant claimed $183,477 "would satisfy [the trustee's] reimbursement claim." Defendant also argued in the trial court that the trustee's claim for declaratory judgment did not seek relief in the form of assignment of additional LP units.

¶ 83    Based on the arguments in the trial court, we find the issue of the distribution to Botelho individually was sufficiently preserved for review. The trial court's final order distributing LP units adopted the trustee's supplement and table of proposed distributions. Although defendant

argued that Botelho had not paid any attorney fees individually, defendant did not cite to record evidence of the use of trust funds to pay all of the attorney fees. We note that the final accounting reflected that the last payment from the trust to the attorneys in this case was made in June 2013. The trustee filed the initial complaint in this case in June 2014 and the operative complaint in August 2017. Moreover, during the hearing, the attorney for the trustee acknowledged that Botelho was not entitled to reimbursement, and based on their proposal was not receiving reimbursement, for fees paid from trust funds. The trustee's attorney stated at the hearing:

"MR. NEHLS:· And then they had the loan, so that's—what it is, I backed that out. Because the point is, basically, she's receiving LP units for the amounts that she's had to pay, but then I, of course, also backed out the unapproved charges and then the cash as well, which is in that table within the motion.

THE COURT: Yeah. That's what I'm looking at.

MR. NEHLS: Right.

THE COURT: But I'm unclear why that—why that's getting backed out.

MR. NEHLS: It's because the—So, for example, the 175,000 is getting *** backed out because ***

THE COURT: You're not getting paid for that.

MR. NEHLS: We're not getting paid for it.

THE COURT: Got it.

MR. NEHLS: Or she's not getting paid for it. And then, likewise, the professional fees paid from Trust cash, that's already paid, so she doesn't need additional LP units to compensate her ***."

¶ 84　The trial court's October 18, 2024 order that directed the trustee to file a motion for final approval, distribution, and release stated that the purpose of the motion was to "provide an accounting of *** how many LP units *** are required to reimburse Plaintiff for the attorneys' fees incurred in this matter (other than those which have been stricken)." Defendant had the opportunity to develop his argument that Botelho should not receive reimbursement for attorney fees in the form of LP units on the ground she did not pay any attorney fees. Defendant failed to point to any facts of record to demonstrate that the trial court's judgment that Botelho paid the attorney fees or should receive reimbursement in the form of LP units was arbitrary, unreasonable, or not based on any evidence.

¶ 85　Defendant's argument was also that the trustee failed to request the additional LP units in the complaint for declaratory judgment. We have found that the trial court had the jurisdiction and legal authority to equitably distribute the trust assets.

¶ 86　Defendant's arguments that the trial court did not have necessary parties before it, or that the valuation it used was improper, were not supported by legal argument or authority. Defendant failed to substantiate his claim that the valuation the trial court used underestimated the value of the trust with proper citations to the record. Defendant only cited to exhibits to his own "Response to Plaintiff's Supplement to Accounting Items." The most relevant exhibits to this argument were a purported balance sheet for the LP dated November 30, 2024, listing total assets of approximately $9.5 million, and a financial statement for the LP listing its account value with its investment firm (Fidelity) as of November 30, 2024 as $8,790,127.63. On appeal, defendant argued that the trial court erred in relying on "a NAV from Fidelity," but defendant did not make any argument as to why the purported value stated in the "balance sheet" is correct or why the trial court could not use the Fidelity statement. Defendant did not cite any evidence as

to how the balance sheet was prepared. Defendant did not demonstrate that the trial court's finding of the value of the LP was against the manifest weight of the evidence.

¶ 87    Defendant did not provide an adequate basis on which to find that the opposite conclusion to the trial court's judgment apportioning LP units was clearly evident. Therefore, defendant's arguments fail.

¶ 88    Next, defendant challenged an October 23, 2029 order granting partial summary judgment in favor of the trustee on the third-party claim by the trust for breach of fiduciary duty based on the trustee "conveying a lease interest as real property and concealing from the other beneficiaries the question concerning the proper characterization of the property." Defendant argued that the leasehold interest was personal property, rather than an interest in real estate, and, therefore, should have been distributed as part of the residuary of the trust rather than to Botelho individually. Defendant did not dispute that "if the leasehold interest constitutes an interest in real estate *** Section 304 [of the trust] required conveyance to [Botelho."] The leasehold interest is a lease to property at Olympia Fields Country Club improved with a residential cottage.

¶ 89    The trust reads, in pertinent part, as follows:

> "3.02 Gifts of Remaining Tangible Personal Property. I give all tangible personal property not otherwise effectively disposed of to my daughter [Botelho.]
>
> * * *
>
> 3.04 Gift of Real Estate. I give any real estate that I own or in which I have any interest (including through a land trust) to my daughter [Botelho.]
>
> 3.05 Gift of Balance of the Trust Estate. I give the balance of the trust estate in shares of equal value outright to my surviving children ***."

¶ 90    The trustee responded that the trial court's rulings that the trust lacked standing to sue, and that the third-party claim was brought in the name of the trust and not by defendant, should end consideration of the matter because defendant could not bring any counterclaims in the name of the trust against Botelho individually or the trustee. Defendant did not reply to the trustee's lack of standing argument.

¶ 91    The trial court found that the trust lacked standing to bring the third-party complaint against Botelho, either as trustee or individually; therefore, the trust's third-party claims, including the claim for breach of fiduciary duty in transferring the leasehold interest to Botelho, necessarily fails. Although we review the judgment granting summary judgment *de novo* (*Barry v. Carr*, 277 Ill. App. 3d 232, 235 (1995)), we find that the trial court's judgment that the trust lacked standing to sue Botelho individually, was dispositive. We agree with the trial court as a matter of law.

¶ 92    First, defendant failed to address his right as a beneficiary to bring a suit against Botelho, individually, in the name of the trust. Therefore, defendant forfeited this argument on appeal. *Bamzai v. Moosani*, 2024 IL App (3d) 230707-U, ¶ 19. Second, forfeiture aside, defendant brought the third-party complaint against Botelho individually in the name of the trust. ("Counter/Cross Plaintiff, Ed Miniat Trust for its Count/Cross Claim against Renee Botelho individually alleges: *** Botelho breached her fiduciary obligations by *** conveying a lease interest as real property ***."). The trial court correctly found that the trust lacked standing to bring this claim. "[T]he concept of standing is so basic that a judge may raise the issue *sua sponte*." *Hundley v. WPD Management, LLC*, 2023 IL App (1st) 230075, ¶ 13. As noted by the trial court: "By virtue of the fiduciary relationship of the trustee and beneficiary, it is the trust beneficiary who has the right to bring an action for damages based on a breach of fiduciary duty

by the trustee." *Fuller Family Holdings, LLC v. Northern Trust Co.*, 371 Ill. App. 3d 605, 615 (2007). See Restatement (Second) of Trusts § 282 (1959) ("Suit in Equity by Beneficiary"), Restatement (Third) of Trusts § 94 (2012) ("(1) A suit against a trustee of a private trust to enjoin or redress a breach of trust or otherwise to enforce the trust may be maintained *only by a beneficiary* or by a co-trustee, successor trustee, or other person *acting on behalf of one or more beneficiaries*" (emphasis added)). Because the trust lacked standing to sue the trustee for a breach of fiduciary duties, the third-party claim in this case must fail. *Fausett v. Walgreen Co.*, 2025 IL 131444, ¶ 51 ("Given plaintiff lacks standing, she cannot maintain her individual claim.").

¶ 93     The foregoing notwithstanding, based on our *de novo* review of the motion for summary judgment, defendant's argument regarding the conveyance of the leasehold fails. At the hearing on the motion for summary judgment, the trial court found that,

> "I would agree with the trustee that [the leasehold interest] is real estate
> *for purposes of the trust* and, therefore, is not property that looks to be—that was
> given to the three beneficiaries. The cottage itself **clearly is real estate. *** The
> cottage and the leasehold interest really are—must go hand in hand. You can't
> have one without the other. And so I'm going to *** deny [defendant's] motion
> for summary judgment." (Emphasis added.)

¶ 94     "[O]ne of the basic tenets for the construction of trusts is to ascertain the intent of the settlor and to give effect to this intent." *Bacardi*, 463 So. 2d at 221. The cottage is "real estate." Fla. Stat. Ann. § 192.001 (West) (" 'Real property' means land, buildings, fixtures, and all other improvements to land. The terms 'land,' 'real estate,' 'realty,' and 'real property' may be used interchangeably."). The lease gives "any interest" in real estate to Botelho. The lease primarily

concerns the cottage affixed to the land. The land that is the subject of the lease is identified as "Cottage Space No. 16." The rent is determined by "the square footage of the area within the foundation of the cottage on the Leased Area." The lease expressly requires the lessor to "pay all real estate taxes assessed against the cottage located on the Lease Area," restricts occupancy of the cottage to "the Lessee and the Lessee's family," and places restrictions on transfers of the cottage. The lease does contain a provision that stated the "Lessee acknowledges that the Cottage is located on private property belonging to Olympia Fields Country Club, and as such Lessee's use and occupancy of the Cottage is subject to the terms and agreements herein provided." Nonetheless, the settlor clearly expressed his intent to convey "any interest" in the cottage to Botelho, and the conveyance of the lease to Botelho is attendant to achieving that intent. Therefore, pursuant to the terms of the trust, the conveyance of the leasehold to Botelho was proper.

¶ 95     Finally, defendant argued that the trial court erred in failing to recognize an unfavorable evidentiary presumption against the trustee based on her failure to produce certain evidence under her control. "Whether a party's failure to produce evidence under such circumstances may be used as an adverse inference against that party is an evidentiary matter, within the discretion of the trial court." *Haslett v. United Skates of America, Inc.*, 2019 IL App (1st) 181337, ¶ 57. "A party is not entitled to a reversal based on ruling on evidence unless the error was substantially prejudiced and materially affected the outcome of the trial." *Habitat Co. v. McClure*, 301 Ill. App. 3d 425, 443 (1998).

¶ 96     Defendant argued that the trustee failed to produce (1) bills for attorney fees and "communications" "pertaining to Trustee's decision to sue," (2) the original "digital file" used to prepare the last accounting, (3) attorney "records" associated with preparing "records for

disclaimers for the beneficiaries," and (4) records pertaining to "work" on behalf of a distributee of the trust rather than the trust itself. Defendant argued that the trial court should have "evaluated the trustee's behavior after imposing an unfavorable presumption for her refusal to produce the listed items." The trustee filed a response to defendant's motion for an unfavorable presumption and argued that "the bulk" of these items were produced to defendant, the trial court previously adjudicated defendant's requests for these items, and the trustee explained the impropriety of other requests. The trustee's response stated, in sum, that the contested evidence was subject to attorney-client privilege, defendant's requests were previously adjudicated in a motion for sanctions or motion to compel, or were already provided. On appeal, the trustee argued that "the trial court reviewed the briefing and evidence presented and reasonably concluded that no unfavorable presumption was appropriate."

¶ 97    The trial court denied defendant's motion, which the court construed as an "untimely motion[] to reconsider." The court wrote that "[a]ny issues which have already been decided are not subject to reconsideration by the Court." The trial court's order relied on the prior determinations concerning defendant's evidentiary requests, yet on appeal defendant failed to address (or acknowledge) those prior rulings or the trustee's arguments in the trial court. An abuse of discretion in a trial court's evidentiary rulings will only be found where "its decision is fanciful, arbitrary, or unreasonable, or where no reasonable person would take the same view." *Williams v. BNSF Ry. Co.*, 2015 IL App (1st) 121901-B, ¶ 43, *Haslett*, 2019 IL App (1st) 181337, ¶ 57 ("An abuse of discretion will be found only where no reasonable person would take the view adopted by the trial court." (Internal quotation marks omitted.)). "An unfavorable evidentiary presumption arises if a party, *without reasonable excuse*, fails to produce evidence which is under his control." (Emphasis added.) *Berlinger's, Inc. v. Beef's Finest, Inc.*, 57 Ill.

App. 3d 319, 325 (1978). Defendant failed to demonstrate that the trial court's judgment based on the prior findings with regard to defendant's evidentiary requests was arbitrary or unreasonable or not based on the evidence. Regardless, defendant only argued that before granting a release to the trustee, the trial court should have evaluated the trustee's conduct in light of the unfavorable presumption. Defendant has not demonstrated how the failure to do so substantially prejudiced him or materially affected the outcome of the trial. *Habitat Co.*, 301 Ill. App. 3d at 443. The trial court did evaluate the trustee's conduct, including her obstructionist behavior, and found that the trustee did not act in bad faith; therefore, the trustee was entitled to the release pursuant to the express terms of the trust.

¶ 98 The trial court did not abuse its discretion in denying defendant's motion for an unfavorable evidentiary presumption.

¶ 99                                   CONCLUSION

¶ 100 For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

¶ 101 Affirmed.